UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
:
SEAN MCCARTHY and 53 VETERANS HIGHWAY, : 20-cv-2124 (ARR)
INC. d/b/a BLUSH GENTLEMAN'S CLUB :
: NOT FOR ELECTRONIC
Plaintiffs, : OR PRINT PUBLICATION
:
-against- : OPINION & ORDER
:
ANDREW CUOMO, COUNTY OF SUFFOLK, UNITED :
STATES SMALL BUSINESS ADMINISTRATION, :
JOVITA CARRANZA, STEVEN MNUCHIN, and THE :
UNITED STATES :
:
Defendants. :
X
--------------------------------------------------------------------

ROSS, United States District Judge:

Sean McCarthy and 53 Veterans Highway Inc. d/b/a Blush Gentleman's Club bring this suit against Andrew Cuomo, individually and in his official capacity as Governor of the State of New York, the County of Suffolk, the United States Small Business Administration ("SBA"), Jovita Carranza in her official capacity as Administrator of the SBA, Steven Mnuchin, in his official capacity as the United States Secretary of Treasury, and the United States. Plaintiff alleges that state and federal responses to the coronavirus pandemic have violated his constitutional rights. He brings this case under 42 U.S.C. § 1983, as well as seeking declaratory judgment under 28 U.S.C. § 2201.

Plaintiffs filed for a temporary restraining order or preliminary injunction on May 26, 2020. The motion seeks an order enjoining enforcement of several of Governor Cuomo's coronavirus-related executive orders; allowing plaintiffs to open their business immediately, enjoining federal defendants from enforcing certain criteria currently required by the Paycheck Protection Program

1

("PPP"); and restoring Plaintiffs to an appropriate place in the PPP application queue. Because plaintiffs have failed to demonstrate a likelihood of success on the merits on any of their claims, the motion is denied.

## BACKGROUND

This case is brought in the context of a global coronavirus pandemic, which has claimed well over 100,000 American lives in the last 3 months. *See e.g.* Coronavirus in the U.S.: Latest Map and Case Count, N.Y. Times (last visited June 16, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html. The pandemic is ongoing, with new infections and deaths being reported every day. New York, and particularly the New York City metropolitan area, have been widely described as the epicenter of the pandemic. *See e.g.* New York Coronavirus Map and Case Count, N.Y. Times (last visited June 16, 2020), https://www.nytimes.com/interactive/2020/us/new-york-coronavirus-cases.html. As of this writing, there were over 40,000 cases and over 2,000 deaths from COVID-19 in Suffolk County, the location of the Blush Gentleman's Club. *See id.* Plaintiff is challenging both state and federal responses intended to combat this public health crisis and mitigate the economic fallout.

### I. Governor Cuomo's Executive Orders

Beginning in March 2020, as the COVID-19 pandemic hit New York, Governor Cuomo issued a series of executive orders placing new restrictions on New Yorkers in an effort to reduce the spread of the virus. Plaintiffs' claims pertain to the following executive orders:

(1) N.Y. Exec. Order No. 202, which declared a disaster emergency in New York State
(2) N.Y. Exec. Order 202.1, which prohibited large gatherings of over 500 people, and required smaller gathering to be limited to fifty percent occupancy
(3) N.Y. Exec. Order 202.3, which prohibited gatherings of more than 50 people and banned restaurants and bars from serving food or beverages on-premises. Restaurants and bars were allowed to continue to serve food or beverages, including alcohol, for off-premises consumption (i.e. take out or delivery).

(4) N.Y. Exec. Order 202.6, which required all New York State businesses to "reduce the in-person workforce at any work locations by 50%," with exceptions for essential businesses. The Order defined essential businesses to include:

> essential health care operations including research and laboratory services; essential infrastructure including utilities, telecommunication, airports and transportation infrastructure; essential manufacturing, including food processing and pharmaceuticals; essential retail including grocery stores and pharmacies; essential services including trash collection, mail, and shipping services; news media;  banks and related financial institutions; providers of basic necessities to economically disadvantaged populations; construction; vendors of essential services necessary to maintain the safety, sanitation and essential operations of residences or other essential businesses;  vendors that provide essential services or products, including logistics and technology support, child care and services needed to ensure the continuing operation of government agencies and provide for the health, safety and welfare of the public

The order further directed the Empire State Development Corporation ("ESD") to review requests from other businesses seeking to be deemed "essential" and to issue additional guidance.
(5) N.Y. Exec. Order 202.8, requiring non-essential businesses to "reduce the in-person workforce by 100%."
(6) N.Y. Exec. Order 202.11, which stated that violation of the capacity limits set by the Executive Orders would be deemed a violation of the Uniform Code.
(7) N.Y. Exec. Order 202.14, which extended the ban on social gatherings.
(8) N.Y. Exec. Order 202.17, which required New Yorkers to wear a mask or other face-covering when in public and unable to maintain social distancing

*See* Am. Compl. ¶¶ 24–40, ECF No. 6; Am. Compl. Exs. A–G; Cuomo's Mem. of Law in Opp. to Pl.'s Mot. for TRO ("Cumo Opp."), 4– 6, ECF No. 20. I will refer to this set of executive orders collectively as the "COVID-19 Executive Orders."

## II. The Federal Paycheck Protection Program

On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) was signed into law. Section 1102 of the CARES Act established the Paycheck Protection Program ("PPP"). This program expanded a pre-existing federal program which provided and guaranteed loans for small businesses. *See* CARES Act §

3

1102(a)(2); Small Business Act, 15 U.S.C. § 636(a)(36). The PPP extended eligibility for small business loans and allocated additional funding. *See* CARES Act §§ 1102(a)(2); 1102(b)(1).

Except where otherwise specified, loans under the PPP follow the same eligibility requirements as those under the pre-existing Small Business Act loan program. *See* 15 U.S.C. § 636(a)(36)(B). One such requirement, unaltered by the CARES Act, is that loans are not provided to "[b]usinesses which (1) [p]resent live performances of a prurient sexual nature; or (2) [d]erive . . . more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature." 13 C.F.R. § 120.110(p).

### III. The Plaintiffs' Business

Sean McCarthy owns and operates Blush Gentleman's Club ("Blush"), a restaurant, bar and gentleman's club located in Commack, New York. Am. Compl. ¶ 72. McCarthy closed Blush on March 16, 2020, following the issuance of N.Y. Exec. Order 202.3. *Id.* ¶ 76. McCarthy claims that he has since suffered "catastrophic financial losses[.]" *Id.* ¶ 77. He further claims that he intended to apply for a loan under the PPP to mitigate his losses, but did not do so because he knew his business would not pass the 13 C.F.R. § 120.110(p).eligibility requirements. Am. Compl. ¶ 62.

## DISCUSSION

The complaint alleges eleven causes of action. Plaintiffs bring six causes of action against Governor Cuomo under § 1983, claiming violations of: (1) the Fourth Amendment prohibition against unreasonable seizures, Am. Compl. ¶¶ 153–171; (2) the First Amendment right to freedom of speech, *id.* ¶¶ 172–190; (3) the First Amendment right to peaceably assemble *id.* ¶¶ 191–209; (4) the Fifth Amendment takings clause, *id.* ¶¶ 210–227; (5) the Fourteenth Amendment due process and equal protection clauses *id.* ¶¶ 228–243; and (6) the right to a republican form of

government under the guarantee clause of Article IV § 4. *Id.* ¶¶ 244–255. The next three claims, seek declaratory judgments stating that: (1) the Executive Orders violate N.Y. Const. Art. III § 1, *id.* ¶¶ 256–258; (2) the Executive Orders violates N.Y. Exec. Law Art. 2-B § 29-a(2)(a), *id.* ¶¶ 259–263. and (3) the executive orders violate the United States Constitution. *Id.* ¶¶ 264–267. The final two causes of action are brought against the federal defendants under § 1983 and allege that the PPP violates (1) the Fifth Amendment due process clause, *id.* ¶¶ 268–289; and (2) Fifth Amendment equal protection. *Id.* ¶¶ 290–300.

Plaintiffs moved for a temporary restraining order or a preliminary injunction, seeking an order enjoining enforcement of the Executive Orders; allowing Blush to open immediately, enjoining federal defendants from enforcing the eligibility requirements of 13 C.F.R. § 120.110(p); and restoring Plaintiffs to an appropriate place in the PPP application queue. *See* Pls.' Emergency App. For a TRO and/or Prelim. Inj., ECF No. 7.

While the County of Suffolk is named as a defendant in this suit, the application for emergency relief does not refer to the County of Suffolk. Moreover, it is not clear that any of the causes of action in the complaint are actually brought against the County of Suffolk. Thus, I do not discuss the County in this opinion and order.

To succeed on a motion for a temporary restraining order or preliminary injunction, a plaintiff must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). Because plaintiffs have failed to demonstrate a likelihood of success on the merits of any of their eleven causes of

action, preliminary relief is denied, without needing to consider the three other factors. I describe below why each claim is unlikely to succeed, and on the contrary, appears doomed to fail.

### I. Claims Against Governor Cuomo

Each of plaintiffs' nine causes of action against Governor Cuomo appear to be based on fundamental misunderstandings of the law. While I will briefly comment on each individual claim below, a similar theme pervades the entire analysis. "[A] community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 27 (1905). When the government acts in the face of such an epidemic, "judicial scrutiny is reserved for a measure that 'has no real or substantial relation to' the object of protecting 'the public health…' or is 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'" *Geller v. de Blasio*, No. 20CV3566 (DLC), 2020 WL 2520711, at *3 (S.D.N.Y. May 18, 2020) (quoting *Jacobson* 197 U.S. at 31).

As the defendant's brief describes, "courts across the country…have overwhelmingly upheld COVID-related state and local restrictions on gatherings over the last few months, citing *Jacobson*." *See* Gov. Cuomo's Mem. of Law in Opp. to the Pls.' Mot for a TRO, ("Gov. Cuomo Br.") 11 (citing *Open Our Oregon v. Brown*, 2020 WL 2542861, at *2 (D. Or. May 19, 2020) *Geller*, 2020 WL 2520711; *Elim Romanian Pentecostal Church v. Pritzker*, No. 20-1811, 2020 WL 2517093 (7th Cir. May 16, 2020); *Spell v. Edwards*, No. 20 Civ. 282, 2020 WL 2509078 (M.D. La. May 15, 2020); *In re Abbott*, 954 F.3d 772 (5th Cir. Apr. 7, 2020); *Lighthouse Fellowship Church v. Northam*, No. 20 Civ. 204, 2020 WL 2110416 (E.D. Va. May 1, 2020); *Henry v. DeSantis*, No. 20 Civ. 80729, 2020 WL 2479447 (S.D. Fla. May 14, 2020); *Calvary Chapel of Bangor v. Mills*, No. 20 Civ. 156, 2020 WL 2310913 (D.Me. May 9, 2020); *Cassell v. Snyders*, No. 20 C 50153, 2020 WL 2112374 (N.D. Ill. May 3, 2020); *Legacy Church, Inc. v.*

6

*Kunkel*, No. 20 Civ. 327, 2020 WL 1905586 (D.N.M. Apr. 17, 2020); *Cross Culture Christian Ctr. v. Newsom*, No. 20 Civ. 832, 2020 WL 2121111 (E.D. Cal. May 5, 2020); *Gish v. Newsom*, No. 20 Civ. 755, 2020 WL 1979970 (C.D. Cal. Apr. 23, 2020); *McGhee v. City of Flagstaff*, No. 20 Civ. 8081, 2020 WL 2308479 (D. Az. May 8, 2020). Plaintiffs have presented no argument which would make their challenge likely to succeed where so many others have failed.

A. *Fourth Amendment Seizure*

The Fourth Amendment protects against unreasonable searches and seizures. Plaintiffs argue that the COVID-19 Executive Orders "constructively intruded upon the Plaintiffs' business by ordering its business restricted and constructively shut down without prior notice and/or an opportunity to be heard." Pls.' Mem. of Law in Supp. of Mot. for Prelim. Inj. ("Pls.' Br.), 18. Even if I accepted that statement as true, Governor Cuomo's actions would not constitute a Fourth Amendment seizure.

The Fourth Amendment is only implicated if "the challenged conduct occurred either during an investigation conducted by the government as an employer or during a law enforcement official's performance of a traditional government function." *Poe v. Leonard*, 282 F.3d 123, 136-37 (2d Cir. 2002); *accord Barnett v. Carberry*, No. 08 Civ. 714, 2009 WL 902396, at *7 (D. Conn. Mar. 30, 2009*)*; *U.S. v. Humphrey*, No. 05 Cr. 385, 2006 WL 1479625, at *2-3 (N.D.N.Y. May 23, 2006). The State of New York is obviously not in any employment relationship with the Blush Club, and the plaintiffs do not allege any law enforcement investigation has taken place. Thus, the Fourth Amendment claim is exceedingly unlikely to succeed.

B. *First Amendment Freedom of Speech and Assembly*

The First Amendment protects against violation of the rights including freedom of speech and peaceable assembly. Const. Amend. I. But the rights to freedom of speech and assembly are

7

not absolute. Content-neutral laws which regulate speech or assembly are subject to intermediate scrutiny. *See Geller*, 2020 WL 2520711 at *3 (citing *Hobbs v. County of Westchester*, 397 F.3d 133, 148-50 (2d Cir. 2005)). "A regulation is content-neutral if it 'serves purposes unrelated to the content of expression ... even if it has an incidental effect on some speakers or messages but not others.'" *Id.* (citing *Hobbs*, 396 F.3d at 150).

The COVID-19 Executive Orders are content neutral. Plaintiffs' argument to the contrary hinges on the proposition the COVID-19 Executive Orders somehow intentionally target businesses that involve an "alternative lifestyle" or "adult dancing[.]" Am. Compl. ¶ 175. This allegation has no basis in reality. The COVID-19 Executive Orders do not specify anything about alternative lifestyles or adult dancing. Instead, they broadly prohibit large gatherings, without any regard for the content of the expression occurring at those gatherings.

Thus, the intermediate scrutiny standard applies. The restriction on speech must be narrowly tailored to serve a significant governmental interest. *See Geller*, 2020 WL 2520711 at *4 (quoting *Hobbs*, 397 F.3d at 149). I can think of few governmental interests more pressing than protecting the public from transmission of highly-contagious and often deadly disease. The available scientific and medical evidence strongly supports restrictions on gatherings as a means of containing the virus. *See id.* I agree with Judge Cote's analysis that prohibitions on large public-gatherings and other similar restrictions are narrowly tailored to the interest of protecting the public from COVID-19. *See id.* Therefore, I find it highly unlikely that plaintiffs' First Amendment claims will be meritorious.

C. *Fifth Amendment Takings*

The Fifth Amendment's Takings Clause states that no "private property [shall] be taken for public use, without just compensation[.]" U.S. Const. Amend. V. There are two types of cases

cognizable under the Takings Clause: physical takings and regulatory takings. *1256 Hertel Ave. Associates, LLC v. Calloway*, 761 F.3d 252, 263 (2d Cir. 2014).

A physical taking "occur[s] when the government physically takes possession of an interest in property for some public purpose," *Buffalo Teachers Fed. v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006), There has been no physical taking here. No government officials have taken physical possession of any property belonging to McCarthy or the Blush Club.

A regulatory taking is an interference with property rights that "arises from a public program adjusting the benefits and burdens of economic life to promote the public good[.]" *Id.* (quoting Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 124 (1978)). The Supreme Court has articulated two guidelines for determining when a regulation is so burdensome that it constitutes a taking. *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942, 198 L. Ed. 2d 497 (2017). "First, 'with certain qualifications ... a regulation which denies all economically beneficial or productive use of land will require compensation under the Takings Clause.'" *Id.* at 1942–43 (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001)). If the regulation does not deny all economically beneficial use of the land, courts are instructed to weigh factors including "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Id.* at 1943 (citing *Palazzolo*, 533 U.S. at 617).

The COVID-19 Executive Orders plainly do not deny McCarthy all economically beneficial use of his property. He could, for example, offer food and drinks from the Blush Club for take-out or delivery. *See* N.Y. Exec. Order 202.3. If McCarthy has lost all income from his club, that is a result of a voluntary choice not to pursue alternative business models that would allow the business to remain open while complying with the regulation.

McCarthy's voluntary choice to close his business also makes him unlikely to succeed in an ad hoc factual analysis of the alleged regulatory taking. He cannot demonstrate any causal connection between the COVID-19 Executive Orders and his financial losses because his choice to close the club entirely was not mandated by the regulation. Moreover, all of his allegations of economic impact are vague and conclusory. *See, e.g.* Am. Compl. ¶ 77 (alleging "catastrophic financial losses"), Thus, the Fifth Amendment Takings Clause claim is unlikely to succeed on the merits.

D. *Fourteenth Amendment*

The Equal Protection Clause of the Fourteenth Amendment states that "no state shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const, amend. XIV. The Due Process Clause requires that "No state shall ... deprive any person of ... property, without due process of law." *Id.*

Plaintiffs have failed to attempt any real argument that the COVID-19 Executive Orders violate either aspect of the Fourteenth Amendment. Both the complaint and the brief in support of the TRO do nothing more than recite the legal standard and make a conclusory statement that plaintiffs' rights have been violated. *See* Am. Compl. ¶ 241 ("The Defendants deprived Plaintiffs of clearly established rights under the Fourteenth Amendment to the United States Constitution."); Pls.' Br. 18 ("Plaintiff BLUSH is a lawful licensed business establishment and Plaintiff MCCARTHY is a law abiding citizen whose rights are being infringed upon.).

Plaintiffs have not even identified the deprivation of any property right that would support a due process claim. There can be no procedural due process claim if such an interest is not established. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Plaintiffs have also not identified any violation of a fundamental right nor reliance on a suspect classification that would support an equal protection claim. "[A] classification neither

involving fundamental rights nor proceeding along suspect lines ... cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.*" Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 680 (2012). Given the seriousness of the COVID-19 pandemic, I find it exceedingly unlikely that plaintiffs will be able to demonstrate that the COVID-19 Executive Orders do not have a rational basis.

E. Guarantee Clause

Plaintiffs argue that the COVID-19 Executive Orders constitute a violation of the separation of powers principles embodied in the Constitution. *See* Def.'s Br. 24 (citing Const. Art. IV § 4). This legal claim is not cognizable. "[T]he Guarantee Clause does not provide the basis of a justiciable claim." *Rucho v. Common Cause*, 139 S.Ct. 2484, 2506 (2019) There is no legal basis for this claim to succeed on the merits.

F. State Law Claims

Finally, plaintiffs allege two state law claims: a violation of Article III, Section 1 of the New York State Constitution and a violation Article 2-B, Section 29-a of the New York State Executive Law. These claims are barred by the Eleventh Amendment, which prohibits lawsuits against a state without the state's unambiguous consent or an act of Congress. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54-55 (1996). Plaintiffs have not stated any reason why the Eleventh Amendment would not bar these claims. Without any applicable exception, the Eleventh Amendment prevents these claims from succeeding on the merits.

Because all of plaintiffs' claims are unlikely to succeed on the merits, no restraint or injunction against the federal defendants, nor any other form of preliminary relief, is justified.

## II. Claims Against Federal Defendants

In addition to the claims against Governor Cuomo, plaintiffs bring two causes of action against a group of federal defendants. Plaintiffs purport to bring their claims under 42 U.S.C. § 1983. There is a fatal flaw to this approach: that statute does not provide a cause of action against federal defendants. *See*, *e.g.*, *Lubrano v. United States*, 751 F. Supp. 2d 453, 455 (E.D.N.Y. 2010) *aff'd*, 448 F. App'x 159 (2d Cir. 2012); *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 n.4 (2d Cir. 1991). That means that this court does not have subject matter jurisdiction over the claims, and there is no likelihood of success on the merits.

## CONCLUSION

Plaintiffs' request for preliminary relief is denied. While I will consider any arguments the plaintiffs put forward in response to the motions to dismiss, plaintiffs may be well-advised to voluntarily withdraw their complaint given the many problems identified in this opinion.

SO ORDERED.

\_\_\_/s/_____

Allyne R. Ross

United States District Judge

Dated:   June 18, 2020

   Brooklyn, New York